William D. Hyslop
United States Attorney
Eastern District of Washington
David M. Herzog
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 26, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL THOMAS MATTERN,<br><br>    Defendant. | Case No. 2:20-CR-00096-RMP-1<br><br>Plea Agreement |

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and David M. Herzog, Assistant United States Attorney, and Defendant Michael Thomas Mattern ("Defendant"), both individually and by and through Defendant's counsel, Mr. Richard L. Mount, agree to the following Plea Agreement:

    1.    <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to plead guilty to Count 1 of the Indictment filed on August 4, 2020, charging Defendant with conspiracy to distribute 5 grams or more of actual (pure) methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), distribution of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and distribution of a mixture and substance containing a detectable amount of buprenorphine (Suboxone), a Schedule III controlled substance,

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 1

in violation of 21 U.S.C. § 841(a)(1), (b)(1)(E)(i); all in violation of 21 U.S.C. § 846. Defendant understands that the charge of conviction is a Class B Felony. Defendant understands that the potential penalties for conviction on this charge are: not less than 5 years and up to 40 years of imprisonment; a fine not to exceed $5,000,000; a term of supervised release of not less than 4 years and up to a lifetime; denial of certain federal benefits as set forth below; and a $100 special penalty assessment. Defendant understands that a violation of any condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

    2.    <u>Denial of Federal Benefits</u>

Defendant understands that by entering a plea of guilty, Defendant will no longer be eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

    3.    <u>The Court is Not a Party to the Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maxima stated in this Plea Agreement.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 2

Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter. Defendant understands that the Court is required to consider the applicable Sentencing Guidelines range, but may depart upward or downward.

4. <u>Effect on Immigration Status</u>

Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes may be removable offenses, including the offense to which Defendant is pleading guilty.

Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that while deportation and/or removal appears to be a virtual certainty if Defendant is not a citizen of the United States, no one, including Defendant's attorney or the District Court, can predict with absolute certainty the effect of Defendant's conviction on Defendant's immigration status.

Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's plea may entail, even if automatic removal from the United States is a virtual certainty if Defendant is not a United States citizen.

5. <u>Waiver of Constitutional Rights and Challenges</u>

Defendant understands that by entering this plea of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a.    The right to a jury trial;

    b.    The right to see, hear and question the witnesses;

    c.    The right to remain silent at trial;

    d.    The right to testify at trial; and

    e.    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Pursuant to *Class v. United States*, --- U.S. ---, 138 S. Ct. 798, 805 (2018) and *Peretz v. United States*, 501 U.S. 923, 936-37, 111 S. Ct. 2661 (1991), Defendant specifically waives all challenges to the constitutionality of the statutes of conviction.

Defendant acknowledges and agrees that any filed motions are hereby mooted, and Defendant agrees not to file or pursue any new pretrial motions.

6.  Elements of the Offense

The United States and Defendant agree that to convict Defendant of Conspiracy to Distribute 5 Grams or More of Actual (Pure) Methamphetamine, Heroin, and Buprenorphine (Suboxone), in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(viii), (b)(1)(C), (b)(1)(E)(i), the United States would have to prove the following elements beyond a reasonable doubt:

a. *First*, beginning no later than March 28, 2020, and continuing until on or about July 20, 2020, in the Eastern District of Washington, there was an agreement between two or more persons to distribute controlled substances;

b. *Second*, Defendant knew or it was reasonably foreseeable to Defendant that the controlled substances that Defendant was conspiring to distribute would include 5 grams or more of actual (pure) methamphetamine, a mixture and substance containing a detectable amount of heroin, and a mixture and substance containing a detectable amount of buprenorphine (Suboxone);

c. *Third*, Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 4

7. Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and that these facts constitute an adequate factual basis for Defendant's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the Guidelines computation or sentencing, unless otherwise prohibited in this agreement.

Beginning no later than March 28, 2020, and continuing until on or about July 20, 2020, in the Eastern District of Washington, Defendant ("Mattern") knowingly and intentionally conspired and agreed with Codefendants Brandy Elice Lorentzen ("Lorentzen") and Joseph Owen Burnett ("Burnett") to distribute controlled substances into the Airway Heights Correctional Center ("AHCC"), where Mattern was employed as a Corrections Officer ("CO").

The means and manner of the conspiracy was the following. Using the AHCC's telephone and email systems, Burnett (who was incarcerated at the AHCC), would make arrangements with Lorentzen (who was not incarcerated), to obtain controlled substances. Lorentzen would collect the controlled substances and arrange to deliver them to Mattern, along with money to compensate Mattern for taking the controlled substances into the AHCC. Mattern, who could travel freely into and out of the AHCC knowing that it was unlikely that he would be searched because he was a CO, would then take the controlled substances into the AHCC for further distribution.

Law enforcement became aware of the scheme in the Spring of 2020, when inmates at AHCC reported to AHCC authorities that there was a CO in Unit R of the facility who was bringing Suboxone into the facility for distribution to inmates. Some of the inmates specifically identified Mattern as the compromised CO. AHCC inspectors began investigating, and started to review the recorded jail calls of Burnett, who was at that time in custody at AHCC on state theft and robbery charges.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 5

Between March and July 2020, Burnett placed dozens of recorded jail calls to Lorentzen on two cellular telephones, in which they arranged for her to obtain methamphetamine, Suboxone, and heroin to give to Mattern to bring into the AHCC. Burnett and Lorentzen, using coded language, referred to Suboxone as "money orders," methamphetamine as "white players" and heroin as "black players" on a purported Hoopfest team. They called Mattern "Goldy" or "Gold Car Guy" because he drove a gold-colored 2005 Nissan Altima. In one call, Burnett referred to the fact that no visitors were allowed at AHCC during the global COVID pandemic, so he had the "only way" to get drugs in, meaning through Mattern.

Mattern was not on any of the telephone calls from inside the AHCC in which Burnett and Lorentzen discussed quantities, types, and prices of drugs.

After Lorentzen and Burnett made arrangements for Lorentzen to obtain controlled substances, Lorentzen would communicate via text message with Mattern, to make arrangements for Lorentzen to give the controlled substances to Mattern to take into AHCC with him during his work shifts. Lorentzen and Burnett also arranged for Lorentzen to give Mattern money for taking the controlled substances into the AHCC for further distribution.

Based on the recorded calls, law enforcement officers with the AHCC and the Federal Bureau of Investigation ("FBI") began surveilling Mattern and Lorentzen when they met up. In all, Lorentzen gave Mattern drugs to take into the AHCC on at least three occasions. On the final occasion, July 19, 2020, Mattern and Lorentzen met at their cars in a parking lot in Spokane Valley. Lorentzen gave Mattern two envelopes, one marked "for you," which contained $1,000, and one marked "for them," which contained the controlled substances that Mattern was to take into the AHCC in furtherance of the conspiracy.

The next morning, on July 20, 2020, Mattern went to work at the AHCC, where he knew it would be unlikely that he would be searched as he entered. Mattern had in his possession a tobacco tin. Inside the tobacco tin was 14.6 grams of pure

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 6

methamphetamine, 2.9 grams of heroin, and approximately 200 strips of Suboxone (buprenorphine).

Mattern acknowledges and agrees that he knowingly agreed to distribute Suboxone into the AHCC, and that he actually did distribute Suboxone into the AHCC. Mattern does not agree that he had specific knowledge that he was also distributing more than five grams of pure methamphetamine and almost three grams of heroin into the AHCC at the same time. Nevertheless, Mattern acknowledges that by agreeing to distribute one contraband substance – Suboxone – into the AHCC in the tobacco tin, it was reasonably foreseeable to him that there would also be other contraband substances in the tobacco tin – including more than 5 grams of pure methamphetamine and 3 grams of heroin. Thus, Mattern agrees that the quantity and purity of the controlled substances that were the object of the conspiracy – 14.6 grams of pure methamphetamine, 2.9 grams of heroin, and approximately 200 strips of Suboxone (buprenorphine) – were either known or reasonably foreseeable to him.

Mattern agrees and acknowledges that the object of the offense was the distribution of controlled substances into a correctional facility. Mattern also agrees that because he was a CO at a correctional facility, he abused a position of public trust that significantly facilitated the commission or concealment of the offense by conspiring to bring drugs into a correctional facility, knowing he would not normally be searched on the way in.

8. <u>United States' Agreements to Dismiss and Not File Additional Charges</u>

No later than the sentencing hearing in this case, the United States Attorney's Office for the Eastern District of Washington agrees to dismiss all remaining charges in the Indictment as against Defendant, and agrees not to bring any additional charges against Defendant based on information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 7

Defendant understands that the United States is free to criminally prosecute Defendant for any other past unlawful conduct or any unlawful conduct that occurs after the date of this Plea Agreement.

9.   Defendant's Waiver of Inadmissibility of Statements

Defendant waives the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if Defendant withdraws this guilty plea or breaches this Plea Agreement. Defendant acknowledges that any statements made by Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against Defendant in the United States' case-in-chief if Defendant were to withdraw or breach this Plea Agreement.

10.   United States Sentencing Guideline Calculations

Defendant understands that the advisory United States Sentencing Guidelines (hereinafter "U.S.S.G." or "Guidelines") are applicable to this case and that the Court will determine Defendant's applicable Guidelines range at the time of sentencing.

a.   Base Offense Level

The United States and Defendant agree that Defendant's base offense level for purpose of the Guidelines will be determined by the Court's calculation of the quantity and purity of drugs that were either known or reasonably foreseeable to Defendant as part of the drug distribution conspiracy. Defendant understands that the Guidelines advise the Court to convert different kinds of drugs into kilogram quantities of marijuana for purposes of calculating drug quantities, and that the Court has the discretion to do so.

The United States and Defendant agree that the following calculations accurately reflect the drug quantity and purity that were either known or reasonably foreseeable to Defendant as part of the conspiracy.

Accordingly, the United States and Defendant agree to the following Guidelines base offense level calculations, when the various controlled substances that were the

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 8

objects of the conspiracy are calculated using their equivalencies to marijuana as set forth in Section 2D1.1 of the Guidelines:

- 14.6 grams of methamphetamine (pure) = 292 kilograms of marijuana
- 2.9 grams of heroin = 2.9 kilograms of marijuana
- Approximately 200 units of Suboxone (buprenorphine, a Schedule III drug) = 200 grams of marijuana[1]

Accordingly, the United States and Defendant agree that Defendant's base offense level is level 24, based on a combined drug quantity with a marijuana equivalency of between 100 and 400 kilograms of marijuana, under U.S.S.G. § 2D1.1. *See* U.S.S.G. § 2D1.1(a)(5), (c)(8); U.S.S.G. § 1B1.3(a).

        b.    <u>Specific Offense Characteristics</u>

The United States and Defendant agree that Defendant's base offense level should be increased by 2 levels because the object of the offense was the distribution of controlled substances into a correctional facility. *See* U.S.S.G. § 2D1.1(b)(4).

The United States and Defendant agree that Defendant has qualified for the *Limitation on Applicability of Statutory Minimum Sentences in Certain Cases*, pursuant to United States Sentencing Guideline Section § 5C1.2 (commonly referred to as the "Safety Valve" under the Guidelines), including the provision requiring that Defendant has truthfully provided the United States with all information and evidence Defendant

---

[1] The United States and Defendant agree that one Suboxone strip is one unit for purposes of the Guidelines. Because the Suboxone strips that were in the tobacco tin had been cut up, it is not possible to calculate the exact number of units of Suboxone that were the object of the conspiracy. The United States and Defendant agree that the Suboxone at issue was approximately 200 units. Regardless of any discrepancy between this 200-strip agreement and the actual number of Suboxone strips, the United States and Defendant agree that the quantity of Suboxone that was the object of the conspiracy is too small to change Defendant's offense level under Section 2D1.1(c)(8). One unit of Suboxone is assigned the marijuana equivalency of one gram (here, 200 *grams* of marijuana). The relevant offense level is calculated on the basis of 100-400 *kilograms* of marijuana, or many thousands of times any potential discrepancy.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 9

has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. Accordingly, the United States and Defendant agree that Defendant's base offense level should be reduced by two levels. *See* U.S.S.G. § 2D1.1(b)(18).

The United States and Defendant agree that Defendant's base offense level should be increased by 2 levels because Defendant, who was a guard at a correctional facility, abused a position of public trust that significantly facilitated the commission or concealment of the offense by conspiring to bring drugs into a correctional facility, knowing he would not normally be searched on the way in. *See* U.S.S.G. § 3B1.3.

The United States and Defendant have no further agreements about the application of other provisions of the Guidelines.

      c.    <u>Acceptance of Responsibility</u>

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and signs and provides this Plea Agreement for filing with the court prior to January 26, 2021, the United States will move for a three-level downward adjustment in offense level for Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b).

Defendant and the United States agree that the United States may at its option and upon written notice to Defendant, not recommend a three-level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense or tests positive for any controlled substance.

      d.    <u>Criminal History</u>

The United States and Defendant understand that Defendant's criminal history computation is tentative and that ultimately Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 10

The United States and Defendant have made no agreement and make no representations as to the criminal history category, which will be determined after the Presentence Investigative Report is completed.

11. <u>Application of the Statutory and Guidelines Safety Valves</u>

The United States and Defendant agree that Defendant is eligible for the so-called "Safety Valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. If the Court agrees and finds that Defendant meets the criteria set forth at 18 U.S.C. § 3553(f)(1)-(5), the United States and Defendant understand that the Court will be in a position to impose a sentence in accordance with the applicable Sentencing Guidelines, without regard to any statutory minimum sentence.

12. <u>Incarceration</u>

The United States agrees to recommend a sentence of incarceration no higher than the low end of the Guidelines range calculated by the United States. Defendant may recommend any legal sentence.

13. <u>Supervised Release</u>

The United States and Defendant each agree to recommend that the Court impose a 10-year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

    a. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs, not to exceed six non-treatment drug tests per month during the imposed term of supervised release; and

    b. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 11

14. Criminal Fine

The United States and Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

15. Judicial Forfeiture of Currency Defendant Has Already Relinquished

Prior to the Indictment being filed in this case, Defendant voluntarily forfeited and relinquished to the United States all right, title, and interest he had in the following listed asset: $960 in U.S. currency ("the currency"). After his arrest and interview, Defendant voluntarily returned the currency to the United States. The amount of the currency, $960 in cash, was the amount that remained of the $1,000 that codefendant Brandy Lorentzen gave Defendant in exchange for his role in the offense conduct.

Defendant now stipulates that he was the sole owner of the currency, and that no one else had or has any interest in that currency. Defendant acknowledges that the currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 853, because it represents proceeds obtained from the controlled substance violation charged in Count 1 of the Indictment, to which Defendant is pleading guilty. If necessary, Defendant agrees to take any steps requested by the United States to pass clear title to the currency to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and forfeiture of the currency. Defendant also agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the currency. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture. Defendant also waives further notice of any federal, state or local proceedings involving the forfeiture of the currency.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 12

16. <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

17. <u>Payments While Incarcerated</u>

If Defendant is incarcerated and lacks the financial resources to pay any monetary obligations imposed by the Court, Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

18. <u>Additional Violations of Law Can Void Plea Agreement</u>

Defendant and the United States agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

19. <u>Waiver of Appeal Rights and Collateral Attack</u>

Defendant is aware that 18 U.S.C. § 3742 affords Defendant the right to appeal Defendant's sentence. Acknowledging this, Defendant knowingly and voluntarily agrees to waive all constitutional and statutory rights to appeal Defendant's conviction, including but not limited to an express waiver of appeal of challenges to the terms of this Plea Agreement, Defendant's guilty plea, the Court's drug calculations, venue, and statute of limitations.

Defendant also knowingly and voluntarily agrees to waive all constitutional and statutory rights to appeal the sentence imposed by the Court, so long as the custodial portion of the sentence the Court imposes is within or below the Guidelines range calculated by the Court.

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 13

Defendant expressly waives Defendant's right to file any post-conviction motion attacking Defendant's mental competence, plea, conviction, and/or sentence, including motions pursuant to 28 U.S.C. § 2255, 28 U.S.C. § 2241, and 18 U.S.C. § 3742, except a motion based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes sentence.

Defendant waives Defendant's right to appeal any fine, Special Assessment, or terms of supervised release imposed by the Court.

Nothing in this Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255.

20.   <u>Compassionate Release and Withdrawal or Vacatur of Defendant's Plea</u>

If Defendant is incarcerated, Defendant specifically retains the right to bring a motion for Compassionate Release pursuant to the Fair Sentencing Act, and the United States specifically retains the ability to oppose such a motion.

However, if Defendant successfully moves to withdraw or vacate Defendant's plea, dismiss the underlying charges, or set aside Defendant's sentence on the count/s to which Defendant is pleading guilty, then the following provisions will apply: (1) this Agreement shall become null and void; (2) the United States may prosecute Defendant on any count to which Defendant has pleaded guilty; (3) the United States may reinstate any counts that have been dismissed, have been superseded by the filing of an Information, or were not charged because of this Agreement; (4) the United States may file any new charges that would otherwise be barred by this Agreement; and (5) the United States may prosecute Defendant on all available charges involving or arising from the incidents charged in the Indictment.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision, including Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

21. <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case. This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

William D. Hyslop
United States Attorney

_____          January 25, 2021
David M. Herzog                                      _____
Assistant U.S. Attorney                                Date

I have read this Plea Agreement and have carefully reviewed and discussed every part of the Plea Agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the United States and me, absent a signed

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 15

writing as set forth herein. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     1-25-21
Michael Thomas Mattern                              Date
Defendant

    I have read the Plea Agreement and have discussed the contents of the Plea Agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties absent a signed writing as set forth herein. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____     1/25/2021
Richard L. Mount                                       Date
Attorney for Defendant

MATTERN PLEA AGREEMENT – DRUG DISTRIBUTION CONSPIRACY – 16